UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| SHARON GAIL HYDEN,  )<br>  )<br>　　Plaintiff,  )　　Civil Action No. 5: 25-079-DCR<br>  )<br>V.  )<br>  )<br>FRANK BISIGNANO, [1]  )　　**MEMORANDUM OPINION**<br>Commissioner of Social Security,  )　　**AND ORDER**<br>  )<br>　　Defendant.  ) | |

*** *** *** ***

Plaintiff Sharon Hyden appeals the Social Security Administration's denial of her claim for disability insurance benefits ("DIB"). [Record No. 9] She contends that the Administrative Law Judge ("ALJ"), assigned to her case erred in his determination of her residual functional capacity ("RFC"). After reviewing the record and considering the parties' arguments, the Court finds that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's motion for summary judgment [Record No. 12] will be granted while Hyden's motion [Record No. 9] will be denied.

**I.**

Hyden was a person closely approaching advanced age (50 years old) when she applied for disability benefits. *See* 20 C.F.R. § 404.1563(d); [Record No. 8 at 33, 230]. She has "a seventh grade education and previously worked as a cashier, food sales clerk, fast-food worker,

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

- 1 -

and cook." [Record Nos. 8 at 52 and 9]  She stopped working in February 2022 due to the following medical conditions: "peptic ulcers with chronic abdominal pain, chronic nausea and vomiting with severe weight loss, chronic back pain and degenerative disc disease, chronic nerve pain from bone spurs, chronic fatigue and weakness, chronic migraines, shortness of breath, cysts in her breasts with frequent pain, depression and anxiety disorders, and frequent kidney stones." [Record Nos. 8 at 230, 232, 258 and 9]

Hyden filed a Title II application for disability and Supplemental Social Security Income in May 2022, alleging a period of disability beginning three months prior. [Record No. 8 at 23]  Her claim was denied initially and again following reconsideration. *Id.* at 23, 70–71, 90–91.  Hyden then submitted a request for an administrative hearing which was held in October 2023. *Id.* at 23.  Both Hyden and a vocational expert testified during the hearing. *Id.* at 43.  Thereafter, ALJ Brian A. Oakes issued a judgment denying the plaintiff's claim for benefits. *Id.* at 34.  Hyden then sought review from the Appeals Council, but that request was denied. *Id.* at 9.  The matter is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

## II.

A "disability" under the Social Security Act ("Act") is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's disability determination is made by an ALJ in accordance with "a five-step sequential evaluation process." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

> First, the claimant must demonstrate that [she] has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that [she] suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that [her] impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, [she] is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform [her] past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as [her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 399 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

A district court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). A reviewing court is not empowered to conduct a *de novo* review, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision even if it would have decided the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714. And substantial evidence is defined as such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

### III.

The ALJ conducted the five-step analysis required for evaluating social security disability cases. [Record No. 8 at 23–29] At step one, the ALJ determines if a claimant is engaging in substantial gainful activity. 20 CFR § 404.1520(b). Substantial gainful activity

occurs when a claimant performs significant physical or mental activities for pay or profit. 20 CFR § 404.1572(b). Here, the ALJ found that, despite Hyden performing *some* work after the onset of her alleged disability, her level of activity did not meet "substantial gainful activity" ("SGA") because her total countable earnings fell short of the threshold set by Social Security Regulations. [Record No. 8 at 25–26]

At step two, the ALJ determines whether a claimant has a medically determinable impairment that is severe or a combination of impairments that collectively are severe. 20 CFR 404.1520(c), 416.920(c). Hyden's ALJ designated that the following severe medically determinable impairments (*i.e.*, ones that "significantly limit" her ability to "perform basic work activities"): "peptic ulcer disease, disorder of the skeletal spine, depressive disorder, and anxiety disorder." [Record No. 8 at 26] The ALJ then determined that Hyden's non-severe impairments (*i.e.*, those having no more than a minimal effect on her ability to perform basic work activities) included "breast cyst, hyperlipidemia, migraines, chronic obstructive pulmonary disease ("COPD"), urinary tract disorder, and weight loss due to digestive issues." *Id.*

Step three requires the ALJ to ascertain if the claimant has an impairment or combination of impairments that are of a severity sufficient to meet or equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. But at this step, Hyden's ALJ determined that none of her impairments singly or in combination met those criteria. [Record No. 8 at 27–29] The ALJ evaluated Hyden's medical conditions by examining the record and analyzing each condition and its related severity in reaching this conclusion. *Id.* And the ALJ specifically considered Hyden's mental limitations including her memory and concentration challenges, ability in interacting with others, and ability to manage herself. *Id.* at 28.

Ultimately, the ALJ found that these singly and collectively constituted only moderate impairments that "do not cause at least two 'marked' limitations or one 'extreme' limitation," and therefore, the criteria were not satisfied. *Id.*

At step four, the ALJ considers whether a claimant has an RFC to perform his or her past relevant work. Here, the ALJ concluded that Hyden could not perform any past relevant work. *Id.* at 33. Next, he determined that she has the RFC to perform medium work, subject to some limitations. *Id.* at 29. The ALJ found that she "cannot perform assembly line work or work that involves strictly enforced daily production quotas" and can "*occasionally* interact with coworkers, supervisors, and the general public [and] adapt to *occasional* workplace changes related to simple tasks." *Id.* (emphasis added). Despite these limitations, the ALJ concluded that Hyden "can understand and remember simple instructions, and she can maintain attention, concentration, and pace to carry out simple tasks over two-hour segments during an eight-hour workday." *Id.*

In reaching this conclusion, the ALJ considered the limitations Hyden described at length and noted that those "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* However, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 29–30. The ALJ supported this finding by outlining a detailed account of her symptoms and treatment efforts since the onset of her alleged disability. *Id.* at 30–31.

The final step calls for the ALJ to ascertain whether the claimant can do any other work. Here, the ALJ found that considering Hyden's "age, education, work experience, and residual functional capacity," there are "jobs that exist in significant numbers in the national economy"

that she can perform despite her inability to perform any past relevant work. *Id.* at 33. The vocational expert testified during the administrative hearing that an individual of her "age, education, work experience, and residual functional capacity" could work as a floor waxer, kitchen helper, and counter supply worker. *Id.* Finding this testimony persuasive, the ALJ determined that Hyden is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* Thus, he concluded she was not disabled as defined by the Act.

Hyden contends that remand is appropriate because the ALJ failed to either adopt all the limitations in medical opinions that he found persuasive or explain why he was omitting those limitations in his RFC findings. [Record Nos. 9 and 13] First, she claims that, despite finding Edd Easton-Hogg, Ph.D.'s opinion persuasive, the ALJ did not adopt his stated limitations concerning Hyden. [Record No. 9] More specifically, Dr. Easton-Hogg's report indicated that Hyden "was moderately limited in her ability to understand, remember and sustain concentration and persistence to carry out even simple instruction," but the ALJ found that she was "able to understand and remember simple instructions and maintain attention, concentration, and pace to carry out simple tasks over two-hour segments during an eight-hour work day." *Id.* Hyden further argues that the ALJ did not account for Dr. Easton-Hogg's determination that she "was moderately limited in her ability to tolerate the stress and pressure of day-to-day employment." *Id.*

The Commissioner asserts that the ALJ was free to consider more than opinion evidence in making his findings. [Record No. 12] And here, the ALJ cited multiple forms of evidence that he was considering. *Id.* The defendant further contends that Hyden's ALJ was under no obligation to "wholly adopt even a persuasive opinion." *Id.* (citing *Reeves v. Comm'r*

*of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)).  Finally, the defendant argues that "not every change in wording from an opinion to the RFC presents a 'conflict' to be resolved under SSR 96-8p." *Id.* (citing *Wilds v. Comm'r of Soc. Sec.*, No. 24-5504, 2025 WL 1001806, at *4-5 (6th Cir. Mar. 31, 2025)).  And here, the ALJ's RFC did not conflict with Dr. Easton-Hogg's opinion that Hyden "could satisfactorily perform mental work activities, but rather captured the moderate restrictions with specific limitations," (*e.g.*, no assembly line or quota work, only occasional interacting with coworkers, and the public, etc.).  *Id.*

The ALJ appeared to incorporate Dr. Easton-Hogg's opined limitations when he noted that she could not perform assembly line or daily production quota work.  [Record No. 8 at 29]  And again, when he found that she could only "*occasionally* interact with coworkers, supervisors, and the general public [and] adapt to *occasional* workplace changes related to simple tasks." *Id.* (emphasis added).  In finding that expert's opinion persuasive, the ALJ was under no obligation to adopt the expert's limitations whole cloth.  Here, he considered, addressed, and incorporated Dr. Easton-Hogg's opinion, and there was no "conflict" needing resolution between that opinion and the ALJ's RFC findings.

Hyden makes a similar argument concerning the ALJ's treatment of Barry Rudnick, M.D. and Jane F. Brake, Ph.D's opinions.  [Record No. 9]  After reviewing the record, Dr. Rudnick opined that Hyden "can understand and remember repetitive three step instructions" and "would do best in a lower stress work environment." [Record No. 8 at 72–73]  Dr. Brake affirmed that opinion during the reconsideration stage.  *Id.* at 82–83.  Hyden argues that remand is necessary because the ALJ found those opinions persuasive but did not adopt the limitations that she could only perform instructions with fewer than three steps in low stress work environments.  [Record No. 5]  In support of this argument, she relies on out-of-circuit cases

- 7 -

in asserting that "'short' and 'simple' are not synonymous and cannot be used interchangeably.[2] [Record No. 5] And because the ALJ limited Hyden to simple tasks but did not limit the length of the instructions she could perform, he failed to address that distinction. *Id.*

The Commissioner contends that Hyden overstates these experts' limitations and the extent of the alleged conflict between them and the ALJ's RFC findings. [Record No. 12] Rather, the opined limitations included that Hyden "would 'do best' in a lower stress work environment and could understand and remember three-step instructions similar to those she had done in the past; could persist, attend, and maintain acceptable pace for a normal work schedule; could accept supervision (which would best be direct and supportive in nature); could engage in routine work-task-related interpersonal interactions; and could adapt to expectable workplace changes." *Id.* The defendant asserts that the ALJ similarly outlined Hyden's limitations as performing simple instructions and "simple tasks that resulted in no more than occasional workplace changes." *Id.* It further contends that those experts "did not assess any particular functional limitation but instead offered the "vague finding" that she would "do best" in a lower stress work environment. *Id.* And despite that "vague finding" the ALJ's limitations went beyond those found by the experts: that she could not perform assembly line or daily production quota, could only occasionally interact with coworkers, supervisors, and the general public, and could adapt to only occasional workplace changes related to simple tasks. *Id.*

---

[2] She asserts that because the SSA has yet to issue an Acquiescence Ruling disagreeing with those cases, they "represent an accurate description of Agency policy" pursuant to 20 C.F.R. § 416.1485 and SSR 96-1p, 1996 WL 374182.

The defendant further insists that even if the ALJ's RFC conflicted with those experts' opinions, he still "considered other factors for evaluating the consistency of Plaintiff's mental complaints with the record and explained his reasons for the RFC he assessed." *Id.* And despite Hyden's belief that the opinion evidence supported a more restrictive RFC, the ALJ's decision is "'not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.'" *Id.* (quoting *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006)).

The plaintiff's argument that the ALJ failed to adopt or reject these experts' opined limitations and that he failed to distinguish between short and simple instructions is unavailing. The ALJ incorporated the experts' finding that Hyden would do best in a lower stress environment when he concluded that she could not work a quota-based job and could only handle occasional interactions with others and occasional workplace changes related to simple tasks. Quota-based work and employment that requires frequent contact with others and changes to tasks inherently contribute to higher stress work environments. Therefore, the ALJ's limitations were not in conflict with those of the experts but were merely more specific.

Likewise, the short and simple distinction argument fails. While the ALJ did not explicitly limit the length of instructions Hyden could perform, he did limit the amount of contact with others (coworkers, managers, and the public) and the workplace changes in finding they could only be occasional. These limitations inherently reduce the opportunities for lengthy instructions and are not in conflict with the experts' opinions. Further, they are supported by substantial evidence in the record.

As discussed previously, a reviewing court does not try the case *de novo* and even if the court would resolve the dispute differently, "the Commissioner's decision must stand if

supported by substantial evidence." *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). Here, the ALJ's opinion is supported by ample evidence and consideration of all material facts. The Court cannot re-weigh the evidence in a manner such as to come to a different conclusion, even one which the evidence could have supported.

V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Sharon Hyden's motion for judgment [Record No. 9] is **DENIED**.

2. Defendant Commissioner of Social Security's motion for judgment [Record No. 12] is **GRANTED**.

3. This action is **DISMISSED** and **STRICKEN** from the docket.

Dated: July 30, 2025.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky